IN THE CIRCUIT COURT FOR 22ND CIRCUIT
CITY OF ST. LOUIS, MISSOURI

| | |
|---|---|
| NOOTER CORPORATION, | ) Case No. _1022-CC01145_ |
| Plaintiff | ) |
| v. | ) |
| | ) DEMAND FOR JURY TRIAL |
| ALLIANZ UNDERWRITERS INSURANCE COMPANY, APPALACHIAN INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND LONDON MARKET INSURANCE COMPANIES, EVANSTON INSURANCE COMPANY, MUNICH REINSURANCE AMERICA, INC. AS SUCCESSOR-IN-INTEREST TO AMERICAN RE-INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, AND NORTH STAR REINSURANCE CORPORATION, | ) |
| Defendants. | ) |
| SERVICE: Cole County Sheriff to serve each defendant c/o Director of Insurance 301 W. High Street, Room 530 Jefferson City, MO 65101 | ) |

**PETITION**

**INTRODUCTION**

1.      This is an action brought by Nooter Corporation ("Nooter") for damages for vexatious refusal to pay, damages for breaches of contracts, damages for fraudulent inducement, and for declaratory judgment pursuant to Missouri Declaratory Judgment Act, Mo. Rev. Stat. 527.010 et al.



EXHIBIT
A

2.    Plaintiff Nooter seeks, *inter alia*:

a.    damages in excess of Twenty-Five Thousand Dollars ($25,000.00) for Appalachian Insurance Company, Certain Underwriters at Lloyd's London and London Market Insurance Companies, Evanston Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA, vexatious refusal to pay Nooter defense and/or indemnity costs in accordance with the terms and conditions of their respective liability insurance policies, together with statutory damages as set forth in Mo.Rev.Stat. §§ 375.296 and 375.420, as well as attorneys' fees;

b.    damages in excess of Twenty-Five Thousand Dollars ($25,000.00) for breach of contract under the liability policies sold by Defendants Allianz Underwriters Insurance Company, Appalachian Insurance Company, Certain Underwriters at Lloyd's London and London Market Insurance Companies, Evanston Insurance Company, Munich Reinsurance America, Inc., as successor-in-interest to American Re-Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and North Star Reinsurance Corporation (collectively the "Excess Defendants") to Nooter, specifically for failure by the Excess Defendants to pay defense and/or indemnity costs in accordance with the terms and conditions of their respective liability insurance policies, together with pre-judgment interest and post-judgment interest;

c.    a declaration that Defendant Continental Casualty Company ("CNA") fraudulently induced Nooter to enter into various settlement agreements with CNA, and damages in excess of Twenty-Five Thousand Dollars ($25,000.00) and punitive damages resulting from CNA's fraudulent inducement;

2

d.    a declaration of the parties' rights, duties, and obligations under umbrella and excess general liability insurance policies that Nooter purchased from the Excess Defendants; and

e.    a declaration of the application of any policy limits under primary comprehensive general liability ("CGL") insurance policies that Nooter purchased from CNA.

<u>THE PARTIES</u>

3.    Plaintiff Nooter is a corporation duly organized under the laws of the State of Missouri, with its principal place of business located in Missouri.

4.    Defendant Allianz Underwriters Insurance Company ("Allianz Underwriters"), as the successor-in-interest to Allianz Underwriters Inc., is a corporation organized under the laws of the State of California, with its principal place of business located in Burbank, California. Allianz Underwriters is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri. Allianz Underwriters sold general liability policies to Nooter covering the periods at least from 1983 through 1985.

5.    Defendant Appalachian Insurance Company ("Appalachian") is a corporation organized under the laws of the State of Rhode Island, with its principal place of business in Johnston, Rhode Island. Appalachian is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri. Appalachian sold general liability policies to Nooter covering the periods at least from 1972 through 1975.

6.    Defendants Certain Underwriters at Lloyd's London include individuals who compose Syndicates organized under the laws of the United Kingdom with their principal place of business in London, U.K. Defendants London Market Insurance Companies are corporations organized under the laws of the United Kingdom with their principal place of business in

3

London, U.K. Certain Underwriters at Lloyd's London and the London Market Insurance Companies (collectively "London") sold Nooter first-layer excess liability insurance policies covering the period at least from 1949 through 1965 and 1975 through 1980 (the "London Policies"). In the London Policies, London agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States at the request of Nooter and to comply with all requirements necessary to give such court jurisdiction.

7.     Defendant CNA is a corporation duly organized under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois. CNA is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri. CNA sold primary CGL insurance policies to Nooter covering the period at least from 1946 through 1964.

8.     Defendant Evanston Insurance Company ("Evanston") is a corporation organized under the laws of the State of Illinois, with its principal place of business in Deerfield, Illinois. Evanston is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri. Evanston sold general liability policies to Nooter covering the periods at least from 1981 through 1985.

9.     Defendant Munich Reinsurance America, Inc., as the successor-in-interest to American Re-Insurance Company ("Munich Re"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in Princeton, New Jersey. Munich Re is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri. Munich Re sold general liability policies to Nooter covering the periods at least from 1965 through 1971.

4

10.    Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.  National Union is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri.  National Union sold general liability insurance policies to Nooter covering the periods at least from 1980 through 1981.

11.    Defendant North Star Reinsurance Corporation ("North Star") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut.  North Star is engaged in the business of selling insurance and is licensed to do business and does do business in the State of Missouri.  North Star sold general liability insurance policies to Nooter covering the periods at least from 1971 through 1975.

JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to Mo. Rev. Stat. § 478.070.

13.    This Court has personal jurisdiction over each insurance company defendant because, upon information and belief, each defendant

a.    is licensed and/or authorized to do business in Missouri;

b.    has, within the relevant time period, done or transacted the business of selling insurance and investigating claims in Missouri;

c.    has sold insurance policies that cover policyholders located in Missouri, including the policies sold to Nooter; and/or

d.    with respect to London, the London Policies obligate London to submit to the jurisdiction of the Courts of the State of Missouri.

14.     Venue is proper pursuant to Mo. Rev. Stat. § 508.010 because the Defendants employ agents for transaction of their usual and customary business in the City of St. Louis, Missouri.  Moreover, venue is proper in St. Louis because Nooter seeks damages and a declaration of its rights under insurance coverage purchased in St. Louis, Missouri.

## THE ASBESTOS CLAIMS

15.     For more than 100 years, Nooter designed, installed, and distributed pressure vessels for refineries and chemical plants, some of which are alleged to have contained asbestos. Individuals have brought suit, and will continue to bring suit in the future, against Nooter alleging asbestos-related bodily injury from exposure to the pressure vessels designed, installed, and distributed by Nooter (the "Asbestos Claims").

16.     The complaints in the Asbestos Claims have alleged, or potentially allege, that injury has taken place during periods in which coverage is provided by the Defendants under the Defendants' insurance policies.

17.     Nooter already has incurred, and will continue to incur, substantial defense costs and/or damages as a result of the Asbestos Claims.

## THE INSURANCE POLICIES SOLD TO NOOTER

18.     There are two sets of insurance policies at issue:  primary policies and excess policies. During the period from at least 1955 through 1964, Nooter purchased primary-level insurance policies from CNA.  During the period 1949 through 1985, Nooter also purchased excess insurance policies from Allianz, Appalachian, Evanston, London, Munich Re, National Union, and North Star.

19.     In exchange for the payment of substantial premiums, CNA sold Nooter CGL primary insurance policies covering annual periods from at least 1955 to 1964 (the "CNA

6

Policies"). Pursuant to the CNA Policies, CNA agreed to defend any claim against Nooter and to pay all defense costs incurred by or on behalf of Nooter in connection with the Asbestos Claims, as long as any part of the alleged injury took place, or could have taken place, during the period covered by the policies. The CNA Policies also require CNA to pay all sums that Nooter becomes legally obligated to pay to third parties through settlements, judgments, or otherwise, in connection with the Asbestos Claims, as long as any part of the injury occurs during the period covered by the policies.

20.    The CNA Policies provide primary level insurance underlying the policies sold by London to Nooter at least between the years 1955-1964.

21.    A chart identifying the CNA Policies at issue in this action is annexed as Exhibit A and is incorporated herein by reference. Exhibit A identifies the policy numbers, the policy periods, and the limits of liability provided by each policy.

22.    In exchange for the payment of substantial premiums Allianz, Appalachian, Evanston, London, Munich Re, National Union, and North Star sold Nooter general liability umbrella or excess insurance policies covering annual periods from at least as early as 1949 to 1985 (the "Excess Policies").

23.    Pursuant to the policies sold by Appalachian, Evanston, and National Union, these three companies agreed to defend any claim against Nooter and to pay all defense costs incurred by or on behalf of Nooter in connection with the Asbestos Claims, as long as any part of the alleged injury took place, or could have taken place, during the period covered by the policies.

24.    Pursuant to the policies sold by Allianz, London, Munich Re, and North Star, these four companies agreed to pay all defense costs incurred by or on behalf of Nooter in

7

connection with the Asbestos Claims, as long as any part of the alleged injury took place, or could have taken place, during the period covered by the policies.

25.    All of the Excess Policies require the Excess Defendants to pay all sums that Nooter becomes legally obligated to pay to third parties through settlements, judgments, or otherwise, in connection with the Asbestos Claims, as long as any part of the injury occurs during the period covered by the policies. This contractual obligation is subject only to the terms and conditions as expressly and unambiguously stated in the Excess Policies.

26.    A chart identifying the Excess Policies at issue in this action and presently known to have been purchased by Nooter is annexed as Exhibit B and is incorporated herein by reference. Exhibit B identifies the policy numbers, the policy periods, and the limits of liability provided by each policy.

## EXCESS DEFENDANTS' FAILURE TO PROVIDE COVERAGE

27.    Nooter has paid, in full, all premiums of the Excess Policies, and has satisfied all pertinent terms that are conditions precedent to Excess Defendants' obligations under the Excess Policies.

28.    Each of the Asbestos Claims alleges, or potentially alleges, injury covered under the Excess Policies.

29.    Nooter is entitled to all benefits provided by the Excess Policies.

30.    Nooter sent a letter to Appalachian, Evanston, London, and National Union on June 19, 2003, demanding that these four insurance companies provide defense and indemnity protection to Nooter in its pending Asbestos Claims. Appalachian, Evanston, London, and National Union have failed to make defense or indemnity payments on behalf of Nooter related to the Asbestos Claims.

8

31.     The Excess Defendants have failed to honor, or have announced their intent not to honor, and have repudiated, or have announced their intent to repudiate, their complete obligations to Nooter under the insurance policies at issue.

32.     Additionally, Evanston, as part of its claims-handling with respect to the Asbestos Claims, has acted improperly and in an abusive manner, including withholding certain privileged documents that Nooter inadvertently produced to Evanston in October 2009.

## FIRST CLAIM FOR RELIEF
### (VEXATIOUS REFUSAL TO PAY)

33.     Nooter repeats and realleges paragraphs 1 through 32, as if fully set forth herein.

34.     For several years, Nooter has repeatedly requested that Appalachian, Evanston, London, and National Union honor their insurance obligations as set forth in their respective insurance policies and pay Nooter's defense and/or indemnity costs for the Asbestos Claims.

35.     Appalachian, Evanston, London, and National Union have consistently refused to pay the amounts due Nooter under their respective insurance policies.

36.     The unequivocal terms of their respective insurance policies obligate Appalachian, Evanston, London, and National Union to pay defense and liability payments incurred by Nooter for Asbestos Claims, and Appalachian, Evanston, London, and National Union's refusal to pay is vexatious and without reasonable cause.

37.     Nooter has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a direct result of Appalachian, Evanston, London, and National Union's vexatious refusal to pay, and Nooter is entitled to, in addition to its general damages, statutory damages as set forth in Mo.Rev.Stat. §§ 375.296 and 375.420, as well as its attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

38.     Nooter repeats and realleges paragraphs 1 through 37, as if fully set forth herein.

39.     As of the time of filing of this Complaint, Nooter has expended more than $9 million in the defense of the Asbestos Claims, and has expended or is obligated to expend more than $9 million in settlements for the Asbestos Claims.

40.     The Excess Defendants have breached the terms of their insurance policies by failing and/or refusing to pay in full Nooter's defense and/or liability in connection with the Asbestos Claims.

41.     Appalachian, Evanston, and National Union have additionally breached the terms of their insurance policies by failing and/or refusing to defend Nooter in connection with the Asbestos Claims.

42.     As a direct and proximate result of their breaches of contract, the Excess Defendants have deprived Nooter of the benefit of the Excess Policies for which Nooter paid substantial premiums, and they have caused Nooter to sustain substantial damages in excess of Twenty-Five Thousand Dollars $25,000.00), the exact amount yet to be ascertained, for the sums already paid, and to be paid in the future, in the defense and settlement of the Asbestos Claims.

## THIRD CLAIM FOR RELIEF
### (FRAUD IN THE INDUCEMENT)

43.     Nooter repeats and realleges paragraphs 1 through 21, as if fully set forth herein.

44.     When Nooter first sought coverage for the Asbestos Claims, CNA refused to make any defense or indemnity payments in accordance with its obligations under the policies sold to Nooter.

10

45. Based on years of CNA's continued refusal, without justification, to make defense or indemnity payments under the policies, despite Nooter's numerous efforts to work cooperatively with CNA, Nooter was finally forced to bring suit against CNA to enforce CNA's obligations under the CNA Policies.

46. In March 2004, Nooter filed a declaratory judgment action with this Court, seeking to enforce the policies and obtain a formal declaration regarding CNA's obligations to Nooter. As part of this action (collectively the "Coverage Action"), Nooter also asserted breach of contract and vexatious refusal to pay claims against CNA for its willful failure to abide by the express terms of the relevant policies.

47. In August 2005, Nooter and CNA reached a settlement in principle to resolve all issues associated with the Coverage Action. Over the course of the next several months, Nooter and CNA engaged in further negotiations to determine the exact wording and memorialize the terms of the settlement.

48. By late February 2006, Nooter and CNA completed these negotiations and drafted a formal written agreement (the "Settlement Agreement"), which was binding and enforceable against both parties. Nonetheless, CNA refused to sign the document, in an attempt to extract additional last-minute concessions from Nooter. When this tactic proved unsuccessful, CNA subsequently breached the Settlement Agreement and refused to abide by its terms.

49. In April 2006, Nooter filed a motion with this Court to enforce the terms of the Settlement Agreement. While the motion was pending, CNA remained in breach and refused to make any payments in accordance with the Settlement Agreement, or the CNA Policies.

11

50.     On July 13, 2006, this Court granted Nooter's motion to enforce the Settlement Agreement. Notwithstanding the Court's order, which required CNA to pay within thirty days of the order, CNA failed to abide by the Court's order and continued to breach the Settlement Agreement by refusing to pay amounts it owed Nooter per the terms of the Settlement Agreement. CNA finally paid the outstanding amounts it owed Nooter under the Settlement Agreement in September 2006, only after Nooter threatened to institute contempt proceedings against CNA.

51.     For more than a year, CNA continued to breach the terms of the Settlement Agreement by again refusing to pay indemnity and settlement costs as required by the Settlement Agreement. In August 2007, Nooter initiated arbitration proceedings to enforce the terms of the Settlement Agreement, and to recover more than $600,000 of unpaid settlement and defense costs.

52.     The parties engaged in arbitration for over a year and were scheduled to proceed to trial in October 2008. In the weeks before the trial, with discovery and pretrial depositions going forward, CNA finally engaged in negotiations to pay the outstanding amounts and settle the arbitration. Thus, the parties stayed the arbitration.

53.     In these negotiations, CNA yet again attempted to extract additional "discounts" off the amounts it owed under the Settlement Agreement. For example, Nooter agreed to discount the total recovery sought for pre-August 2007 claims by more than $184,000 in exchange for CNA's promise of prompt payment within thirty days of the execution of this new agreement.

54.     In September 2008, Nooter and CNA yet again reached an agreement-in-principle which was formalized in a letter agreement (the "Letter Agreement") to resolve the

12

issues raised in arbitration and outline principles for implementing the Settlement Agreement going forward. The Letter Agreement identified specific principles aimed at avoiding any further disputes. The Letter Agreement did not amend or alter the Settlement Agreement.

55. Again, CNA used delay tactics to avoid executing the Letter Agreement. Although Nooter sent the Letter Agreement to CNA for approval in October 2008, CNA ignored Nooter's attempts to finalize the agreement. CNA did not send any comment regarding finalizing the Letter Agreement until mid-December 2008, and CNA did not respond to Nooter's attempts to finalize the Letter Agreement until after Nooter threatened to lift the stay in the arbitration.

56. Even after Nooter's repeated requests and threats to reinstate the arbitration, CNA did not execute the Letter Agreement until January 23, 2009, almost five months after the agreement-in-principle had been reached.

57. Almost immediately, however, CNA breached the terms of the Letter Agreement by failing to pay the discounted amount within thirty days after execution. Nooter was forced to send numerous letters protesting the breach and demanding payment, as well as threaten additional litigation, before CNA finally paid the discounted amount in April 2009, more than thirty days past due.

58. After Nooter and CNA reached an agreement-in-principle and stayed the arbitration, Nooter continued to submit newly settled claims for payment, in accordance with the Settlement Agreement, that were not resolved by the agreement-in-principle and subsequent Letter Agreement. Nooter sent demands for payment to CNA on October 3, 2008, May 15,

13

2009, August 12, 2009, and September 14, 2009. CNA has failed to make defense or indemnity payments on behalf of Nooter related to these claims.[1]

59.     To date, CNA remains in breach of both the Settlement Agreement and Letter Agreement, and it owes Nooter more than $800,000 in past indemnity payments. At the same time, Nooter continues to incur further defense and liability costs related to the Asbestos Claims.

60.     Throughout this process, CNA has willfully and intentionally engaged in a calculated strategy to deny, delay, and diminish all amounts rightfully recoverable by Nooter under the CNA Policies and the Settlement Agreement.

61.     CNA's conduct demonstrates that its intention at all times has been to avoid payment, and that the Settlement Agreement, Letter Agreement, and CNA's promises of payment were only ruses to achieve delay. CNA never intended to comply with its agreements or promises but only sought to avoid its obligations and induce Nooter to dismiss legal proceedings that would enforce CNA's contractual obligations.

62.     CNA fraudulently induced Nooter to enter into the Settlement Agreement. Despite the representations made by CNA during the negotiation process, CNA never intended to perform in accordance with the terms and conditions ultimately "agreed to" by the parties.

63.     CNA knowingly misrepresented its intentions as part of its systematic effort to avoid paying the amounts rightfully due Nooter under the CNA Policies. In particular, CNA misrepresented its intentions regarding the Settlement Agreement to induce Nooter to terminate

---

[1] In August and September 2009, after numerous demands from Nooter, CNA made late, partial payments of amounts first requested in Nooter's October 3, 2008 demand letter. These late, partial payments are in accordance with CNA's pattern and practice of refusing to make payments without the threat of potential additional litigation.

14

the Coverage Action, secure a discount on the amounts rightfully due under the CNA Policies, and extract other material concessions from Nooter.

64. Unaware of CNA's true intentions, Nooter rightfully relied on these misrepresentations to its detriment. In particular, Nooter was induced to terminate the Coverage Action and voluntarily forfeit a portion of the full recovery sought under the CNA Policies.

65. In furtherance of its strategy, CNA also fraudulently induced Nooter to enter into the Letter Agreement. Despite the representations made by CNA during the negotiation process, CNA never intended to perform in accordance with the terms and conditions set forth in the Letter Agreement.

66. CNA knowingly misrepresented its intentions regarding the Letter Agreement to induce Nooter to terminate the arbitration proceedings and to extract further discounts on the amounts due under the Settlement Agreement.

67. Unaware of CNA's true intentions, Nooter relied on these misrepresentations to its detriment. In particular, Nooter was induced to terminate the arbitration proceedings and voluntarily forfeit a portion of the amounts rightfully due under the Settlement Agreement.

68. The fraud perpetrated by CNA has forced Nooter to engage in years of costly additional litigation merely to collect the amounts CNA fraudulently promised to pay in the Settlement Agreement and subsequent Letter Agreement. At the same time, Nooter has been forced to bear the severe financial burden of paying defense and liability costs associated with the Asbestos Claims without the benefit of the insurance coverage it purchased from CNA decades ago.

69. As a direct and proximate result of CNA's fraudulent actions, Nooter has been damaged in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

15

70.    CNA's fraudulent actions were intentional, willful and wanton, entitling Nooter to punitive damages.

## FOURTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: COVERAGE)

71.    Nooter repeats and realleges paragraphs 1 through 37, as if fully set forth herein.

72.    The Excess Policies obligate the Excess Defendants to pay Nooter's liability in full, up to the limits of the Excess Policies, for damages incurred by Nooter in connection with the Asbestos Claims.  Nooter has requested that each Excess Defendant honor its policy obligations in connection with the Asbestos Claims.

73.    The Excess Defendants have failed to pay or indemnify Nooter for defense costs and liabilities related to the Asbestos Claims.

74.    The policies sold by Appalachian, Evanston, and National Union obligate these three defendants to defend Nooter in connection with the Asbestos Claims.

75.    Appalachian, Evanston, and National Union have refused and failed to assume the defense of Nooter in connection with the Asbestos Claims.

76.    As a result of the foregoing, the rights, status, and other legal relations between Nooter and the Excess Defendants are uncertain and insecure, and an actual and justiciable controversy exists between Nooter and the Excess Defendants regarding their obligations to defend Nooter and to pay Nooter's defense costs and liability in full in connection with the Asbestos Claims.

77.    Nooter seeks a declaration by this Court of the obligations of the Excess Defendants under the Excess Policies sold to Nooter.

78.    Declaratory relief from this Court will resolve the disputes between Nooter and the Excess Defendants about the Excess Defendants' duty to pay Nooter's defense and liability in full in connection with the Asbestos Claims, under the Excess Policies.

79.    A judicial declaration is necessary to establish Nooter's rights and the Excess Defendants' duties under the Excess Policies.

80.    An actual controversy of a justiciable nature exists between the parties concerning the Excess Defendants' duties to pay Nooter's defense and liability in full with respect to the Asbestos Claims under the Excess Policies sold to Nooter. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

## FIFTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: APPLICABILITY OF CNA POLICIES' LIMITS)

81.    Nooter repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

82.    Nooter has reached a settlement agreement with CNA that sets forth CNA's coverage obligation to Nooter, but Nooter and CNA have not resolved issues regarding the exhaustion of any applicable limits of liability of the CNA Policies to the Asbestos Claims.

83.    Nooter seeks a declaration as to the level of erosion and/or exhaustion, if any, of any applicable limits in the CNA Policies.

84.    Declaratory relief from this Court will resolve the dispute between Nooter and CNA and the Excess Defendants about the level of erosion and/or exhaustion, if any, of any applicable limits in the CNA Policies.

85.    A judicial declaration is necessary to establish the level of erosion and/or exhaustion, if any, of any applicable limits in the CNA Policies.

86.    An actual controversy of a justiciable nature exists between the parties concerning the level of erosion and/or exhaustion, if any, of any applicable limits in the CNA

Policies. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

WHEREFORE, Plaintiff Nooter requests judgment as follows:

I. With respect to the First Claim for Relief, that this Court

a.     enter judgment in favor of Nooter in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), the exact amount hereafter to be determined, to compensate for its damages arising from the Excess Defendants' vexatious refusal to pay;

b.     award Nooter statutory damages as set forth in Mo.Rev.Stat. §§ 375.296 and 375.420; and

c.     award Nooter its costs incurred in bringing this action, including attorneys' fees and interest as permitted by law, and such other relief as the Court shall deem just and proper.

II. With respect to the Second Claim for Relief, that this Court

a.     enter judgment in favor of Nooter in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), the exact amount hereafter to be determined, to compensate for its damages arising from the Excess Defendants' breaches of contract; and

b.     award Nooter its costs incurred in bringing this action, including attorneys' fees and interest as permitted by law, and such other relief as the Court shall deem just and proper.

III. With respect to the Third Claim for Relief, that this Court

a.     enter judgment in favor of Nooter declaring that CNA fraudulently induced Nooter to enter into the Settlement Agreement and Letter Agreement;

18

b.      award damages to Nooter in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), the exact amount hereafter to be determined, to compensate for its damages arising from the fraud perpetrated by CNA, including all costs and attorneys' fees incurred in past efforts to enforce the Settlement Agreement;

c.      award Nooter its costs incurred in bringing this action, including attorneys' fees and interest as permitted by law; and

d.      award Nooter punitive damages in an amount hereafter to be determined to punish CNA for its willful, wanton and intentional acts of fraud, and such other relief as the Court shall deem just and proper.

IV.  With respect to the Fourth Claim for Relief, that this Court determine and declare

a.      that Allianz, Appalachian, Evanston, London, Munich Re, National Union, and North Star are each obligated to pay Nooter's legal liability under the Excess Policies in connection with the Asbestos Claims, including the costs incurred in connection with the investigation and defense of the Asbestos Claims and all sums that Nooter has or will become obligated to pay as damages with respect to the Asbestos Claims; and

b.      that Nooter is entitled to designate the insurance policy(ies) and policy year(s), from those that are required to respond, that shall be called upon to provide such payment.

V.  With Respect to the Fifth Claim for Relief, that this Court determine and declare

a.      the level of erosion and/or exhaustion of the applicable limits, if any, of the CNA Policies.

19

## DEMAND FOR JURY TRIAL

Plaintiff respectively demands jury trial on all issues so triable.

Respectfully submitted,

LEWIS, RICE & FINGERSH, L.C.

Richard A. Wunderlich
Mo. Bar No. 27979
600 Washington Avenue
Suite 2500
St. Louis, Missouri 63101
(314) 444-7600 Telephone
(314) 612-1308 Facsimile
rwunderlich@lewisrice.com

and

Of Counsel
David L. Elkind, Esq.
John A. Gibbons, Esq.
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006-5403
(202) 420-2200

Attorneys for Plaintiff Nooter Corporation

20

## EXHIBIT A

| Insurer | Policy Number | Policy Period | Bodily Injury Liability Limit |
|---|---|---|---|
| CNA | CL2688000 | 9/1/55-9/1/56 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL2681444 | 9/1/56-9/1/57 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL2681497 | 9/1/57-9/1/58 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL2691547 | 9/1/58-9/1/59 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL4306135 | 9/1/59-9/1/60 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL4302273 | 9/1/61-9/1/62 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL4295730 | 9/1/62-9/1/63 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |
| CNA | CL4302296 | 9/1/63-9/1/64 | $100,000 each person<br>$300,000 each accident<br>$300,000 aggregate products |



### EXHIBIT B

| Insurer | Policy Number | Policy Period | Bodily Injury Liability Limit |
|---|---|---|---|
| Allianz | AUX 5201679 | 7/1/83-7/1/85 | $5,000,000 excess of $5,000,000 excess of $1,000,000 Primary |
| American Re | M7811 0001 | 7/1/65-7/1/68 | $3,000,000 excess of $1,500,000 excess of $1,000,000/$2,000,000 Primary |
| American Re | M0085094 | 7/1/68-7/1/71 | $3,000,000 excess of $1,500,000/$3,000,000 excess of $1,000,000/$2,000,000 Primary |
| Appalachian | 71174 | 7/1/72-7/1/75 | $1,000,000 excess of $1,000,000/$2,000,000 Primary |
| Evanston | UM100176 | 7/1/81-7/1/82 | $25,000,000 excess of $1,000,000 Primary |
| Evanston | UM100296 | 7/1/82-7/1/83 | $25,000,000 excess of $1,000,000 Primary |
| Evanston | CN 503824 | 7/1/83-7/1/84 | $5,000,000 excess of $1,000,000 Primary |
| Evanston | CN 504032 | 7/1/84-7/1/85 | $5,000,000 excess of $1,000,000 Primary |
| London | 144053 | 9/13/49-9/1/50 | $400,000 excess of $100,000 Primary |
| London | 151648 | 9/1/50-9/1/51 | $400,000 excess of $100,000 Primary |
| London | 158297 | 9/1/51-9/1/52 | $400,000 excess of $100,000 Primary |
| London | 466786 | 9/1/52-9/1/53 | $400,000 excess of $100,000 Primary |
| London | 477160 | 9/1/53-9/1/54 | $500,000 excess of $100,000/$300,000 Primary |
| London | 488674 | 9/1/54-9/1/55 | $500,000 excess of $100,000/$300,000 Primary |
| London | 496167 | 9/1/55-9/1/56 | $500,000 excess of $100,000/$300,000 Primary |
| London | 496447 | 10/1/55-9/1/56 | $500,000 excess of $500,000 excess of $100,000/$300,000 Primary |
| London | 499165 | 9/1/56-9/1/57 | $500,000 excess of $100,000/$300,000 Primary |
| London | 499584 | 9/1/56-9/1/57 | $500,000 excess of $500,000 excess of $100,000/$300,000 Primary |
| London | 503803 | 9/1/57-9/1/58 | $500,000 excess of $100,000/$300,000 Primary |
| London | 503804 | 9/1/57-9/1/58 | $500,000 excess of $500,000 excess of $100,000/$300,000 Primary |
| London | 507034 | 9/1/58-9/1/59 | $500,000 excess of $100,000/$300,000 Primary |
| London | 507305 | 9/1/58-9/1/59 | $500,000 excess of $500,000 excess of $100,000/$300,000 Primary |
| London | 510444 | 9/1/59-9/1/60 | $500,000 excess of $100,000/$300,000 Primary |

| Insurer | Policy Number | Policy Period | Bodily Injury Liability Limit |
|---|---|---|---|
| London | 510445 | 9/1/59-9/1/60 | $500,000 excess of $500,000 excess of $100,000/$300,000 Primary |
| London | 513669 | 9/1/60-5/17/61 | $500,000 excess of $100,000/$300,000 Primary |
| London | 513670 | 9/1/60-5/17/61 | $500,000 excess of $500,000 excess of $100,000/$300,000 Primary |
| London | 515653 | 5/17/61-5/17/64 | $2,000,000 excess of $100,000/$300,000 Primary |
| London | 524123 | 5/17/64-7/1/65 | $2,000,000 excess of $100,000/$300,000 Primary |
| London | MC6692 | 7/1/75-7/1/78 | $4,000,000 excess of $1,000,000/$2,000,000 Primary |
| London | MC7980 | 7/1/78-7/1/79 | $4,000,000 excess of $1,000,000/$2,000,000 Primary |
| London | MC7980 | 7/1/79-7/1/80 | $5,000,000 excess of $1,000,000 Primary |
| National Union | BE 1331118 | 7/1/80-7/1/81 | $10,000,000 excess of $1,000,000 Primary |
| North Star | NSX9590 | 7/1/71-7/1/75 | $3,000,000 excess of $1,000,000 excess of $1,000,000/$2,000,000 Primary |

## Wunderlich, Rick A.

**From:** Wunderlich, Rick A.
**Sent:** Wednesday, March 03, 2010 3:01 PM
**To:** Wunderlich, Rick A.
**Subject:** Emailing: sop.htm

---

Missouri State Government | DIFP Home | Insurance Home | Search | Site Map | Jobs | Help | Contact us

 **DIFP**
Department of Insurance,
Financial Institutions &
Professional Registration

Jeremiah W. (Jay) Nixon, Governor
John M. Huff, Director

| Wednesday, March 03, 2010 |
| --- |

Search Insurance



Search | Clear
Advanced Search

**Quick Links**

Consumer complaints
Captive Insurance Program
Agent/Licensee Lookup
Ask Insurance
Enforcement actions
Public events
Reports
Insurance laws
Links


**Get insurance news fast**

Get Adobe Reader

Insurance Home » Statutes, Regulations and Bulletins

# Service of Process FAQ's

## What are the Missouri state codes and regulations regarding service of process?

§375.256; §375.261; §375.906 RSMo and 20 CSR 800-2 📄

## How do I find the registered agent for a particular insurance company?

The director of insurance is appointed to receive service on behalf of all *foreign authorized* insurance companies, in any action instituted in any court of this state.

## How do I know if the company is licensed in MO?

Do a Insurance Company Lookup on the Insurance website

## How do I serve a foreign authorized insurance company?

By delivery of (2) copies of the summons and petition by the sheriff of Cole County, MO.

## What is the address for Service of Process?

{Name of Insurer}
c/o Director of Insurance
301 W. High Street, Room 530
Jefferson City, MO 65101

## Is there a fee for service?

There is no fee charged to the plaintiff by this Department. A fee of ten dollars is charged to the defendant for accepting each service upon the company. §374.230 (10)

3/9/2010